Paul W. Moncrief, Esq., SBN 204239
Paul Hart, Esq., SBN 237766
JOHNSON & MONCRIEF, PLC
295 S. Main Street, Suite 600
Salinas, California 93901
Telephone: 831.759.0900
Facsimile: 831.759.0902

Attorneys for Plaintiff Michael Larkin,

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **In re**<br><br>**ROBERT EDWARD HAYNER and JANE E. HAYNER,**<br><br>**Debtors.** | **Case No. 11-51102**<br><br>Chapter 7<br><br>Adv. Pro. No.: |
| **MICHAEL LARKIN, an individual, INKA LARKIN, an individual;**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ROBERT EDWARD HAYNER, an individual; and JANE E. HAYNER, an individual,**<br><br>**Defendants.** | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND OBJECTIONS TO DISCHARGE** |

Plaintiffs Michael Larkin and Inka Larkin hereby allege as follows:

1. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue in this court is proper pursuant to 28 U.S.C. § 1409.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 1 of 39

4. Plaintiffs Michael Larkin and Inka Larkin are a married couple residing in Monterey County, California.

5. Defendant Robert Edward Hayner is an individual, who upon information and belief, resides in Monterey County, California.

6. Defendant Jane E. Hayner is an individual, who upon information and belief, resides in Monterey County, California. At all times material herein, Defendant Jane was the spouse of Defendant Robert and participated in and/or benefitted from the activities described herein.

7. On or about February 28, 2005, Plaintiffs and Defendants entered into a written agreement entitled Agreement to Purchase and Sale of Stock (the "Agreement") whereby Defendants agreed to purchase from Plaintiffs Plaintiffs' shares of stock in a Canadian corporation called Michael Larkin Consulting, Inc. A true and accurate copy of the Agreement is attached hereto as **Exhibit A** and is incorporated herein by this reference.

8. Concurrent with the execution of the Agreement, Plaintiffs transferred to Defendants' Corporation, Carmel Applied Technologies, Inc., ("CATI") valuable software. The transfer was a condition concurrent to the Agreement.

9. Defendants were required under the Agreement to pay Plaintiffs $1 million Canadian dollars at the closing date of the Agreement in exchange for 40 percent of Plaintiffs' shares of stock. As to the remaining 60 percent of shares, Defendants were required to make annual payments from 2005 through 2014. The amount of payments was contingent upon the revenue earned by CATI in a fiscal year.

10. At the time the Agreement was made, Defendants had no intention of paying Plaintiffs for the remaining 60 percent of the shares. Instead, Defendants' true intention was to

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 2 of 39

sell CATI, the value of which was vastly improved by the software technology transferred by Plaintiffs, and transfer and conceal from Plaintiffs the sales proceeds.

11. During the 2005 fiscal year, CATI earned sufficient revenue to obligate Defendants to pay Plaintiffs the sum of $400,000. However, Defendants never paid to Plaintiffs this sum. Rather, upon information and belief, Defendants sold CATI for a purchase price of approximately $11 million and subsequently transferred the sales proceeds into an investment account run by Defendant Robert Hayner's brother-in-law at 6800 Capital, LLC, located in Princeton, New Jersey. Defendants have never told the bankruptcy trustee about this transfer nor is the account listed as an asset in their bankruptcy schedule.

12. On or about February 26, 2009, Plaintiffs filed a complaint against Defendants in the Superior Court for the State of California, County of Monterey, for breach of contract in an action entitled _Larkin v. Hayner_, (Case No. M97268). A true and accurate copy of the State Court Complaint is attached hereto as **Exhibit B**.

13. On or about September 22, 2010, a default judgment was entered against Defendants in the State Court Action in the amount of $588,991.75. True and accurate copies of the Default Judgment and Abstract of Judgment are attached as **Exhibits C and D** respectively.

**FIRST CLAIM FOR RELIEF**

**(Money Obtained by False Pretenses)**
**(11 U.S.C. §523(a)(2))**
**(Against All Defendants)**

14. Plaintiffs reallege and incorporate by reference paragraphs 1 through 13 as though fully set forth herein.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 3 of 39

15. For the reasons mentioned above, Defendants obtained from Plaintiffs money and/or property by false pretenses, false representations, and actual fraud. Defendants' obligation to Plaintiffs is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(2).

**SECOND CLAIM FOR RELIEF**

**(Defalcation While Acting in a Fiduciary Capacity)**
**(11 U.S.C. §523(a)(4))**
**(Against All Defendants)**

16. Plaintiffs reallege and incorporate by reference paragraphs 1 through 15 as though fully set forth herein.

17. Defendants owed Plaintiffs a fiduciary duty to hold in trust for the benefit of Plaintiffs the monies earned by CATI.

18. Defendants breached their fiduciary duty by failing to pay Plaintiffs for the monies owed under the Agreement. Instead, Defendants sold CATI for a purchase price of approximately $11 million and fraudulently transferred the sales proceeds into an investment account run by Defendant Robert Hayner's brother-in-law.

19. Defendants' breach constitutes defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4). As a result, Defendants' obligation to Plaintiffs is nondischargeable.

**THIRD CLAIM FOR RELIEF**

**(Willful and Malicious Injury)**
**(11 U.S.C. §523(a)(6))**
**(Against All Defendants)**

20. Plaintiffs reallege and incorporate by reference paragraphs 1 through 19 as though fully set forth herein.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 4 of 39

21. Defendants' actions as described herein were willful and malicious and were intended to, and did cause injury to Plaintiff. Defendants' obligation to Plaintiff is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

**FOURTH CLAIM FOR RELIEF**

**(Denial of Discharge-Transfer and Concealment of Property)**
**(11 U.S.C. § 727(a)(2)(A))**
**(Against All Defendants)**

22. Plaintiffs reallege and incorporate by reference paragraphs 1 through 21 as though fully set forth herein.

23. Upon information and belief, in the year prior to filing their petition, Defendants transferred and concealed monies earned from the sale of CATI into an investment account maintained by Defendant Robert Hayner's brother-in-law at 6800 Capital, LLC located in Princeton, New Jersey.

24. Defendants' efforts to transfer and conceal this money and property were taken with the intent to hinder and defraud Plaintiffs and officers of the bankruptcy court.

**FIFTH CLAIM FOR RELIEF**

**(Denial of Discharge-Concealment of Records)**
**(11 U.S.C. § 727(a)(3))**
**(Against All Defendants)**

25. Plaintiffs reallege and incorporate by reference paragraphs 1 through 24 as though fully set forth herein.

26. Upon information and belief, Defendants have concealed, destroyed, falsified, and failed to keep and preserve recorded information including books, documents, records, and

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 5 of 39

papers from which Defendants' true financial condition and business transactions could be ascertained.

27. Defendants' concealment, destruction, falsification, and failure to keep and preserve information was done without justification.

28. Defendants' concealment, destruction, falsification, and failure to keep and preserve information was done for their own personal gain and with the knowledge that it would cause damage to Plaintiffs and other creditors of Defendants.

## SIXTH CLAIM FOR RELIEF

**(Denial of Discharge-False oath and Withholding Documents from Officer)**
**(11 U.S.C. § 727(a)(4))**
**(Against All Defendants)**

29. Plaintiffs reallege and incorporate by reference paragraphs 1 through 28 as though fully set forth herein.

30. Defendants have knowingly and fraudulently made a false oath or account by omitting on their bankruptcy schedules the monies that they obtained from the sale of CATI.

31. Upon information and belief, Defendants have withheld from officers of the bankruptcy court books, documents, records, and papers relating to Defendants' property and financial affairs.

**WHEREFORE, Plaintiffs pray for judgment as follows:**

**On all Claims for Relief**

1. For judgment in the amount of $588,991.75 plus statutory interest from September 22, 2010;

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 6 of 39

2. That said judgment be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6);

3. That discharge be denied pursuant to 11 U.S.C. § 727(a)(2)(A), 727(a)(3), and 727(a)(4);

4. For Plaintiff's attorney fees and costs of suit; and,

5. For such other and further relief as the Court deems just and proper.

Dated: May 6, 2011

JOHNSON & MONCRIEF, PLC

Paul W. Moncrief
Attorneys for Plaintiff Michael Larkin

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 7 of 39

# EXHIBIT A

DRAFT

# AGREEMENT OF PURCHASE AND SALE OF STOCK

This Agreement of Purchase and Sale of Stock ("Agreement") is made as of February 28, 2005 at Seaside, California, among Robert E. Hayner and Jane Hayner ("Buyer"); Michael Larkin and Inka Larkin ("Shareholder"); and Michael Larkin Consulting, Inc., a Canadian corporation having its principal office at BEACONSFIELD ("Corporation"). In this Agreement, Shareholder and Corporation are collectively referred to as Selling Parties.

## RECITALS

**WHEREAS,** Shareholder has represented that he owns all the outstanding stock of Corporation.

**WHEREAS,** Buyer desires to purchase from Shareholder, and Shareholder desires to sell to Buyer, all the outstanding stock of Corporation (the "Shares").

**WHEREAS,** Corporation desires that this transaction be consummated.

## AGREEMENT

In consideration of the foregoing recitals and the mutual covenants, agreement, representations, and warranties contained in this Agreement, the parties agree as follows:

**1. Sale and Transfer of Shares.** Subject to the terms and conditions set forth in this Agreement, on the closing date, Shareholder will transfer and convey shares to Buyer, and Buyer will acquire the Shares from Shareholder.

**2. Purchase of Shares.** The purchase of the Shares shall be made pursuant to the following schedule:

(a) On Closing, subject to payment by Buyer as set forth in Section 3(a), forty percent (40%) of the Shares shall be transferred to Buyer on Closing;

(b) The remaining sixty percent (60%) of the Shares shall be transferred as subject to the payment schedule set forth in Section 3(b).

**3. Payment for Shares.** As partial payment for the transfer of the Shares by Shareholder to Buyer, in accordance with the provisions of Section 4, Buyer shall deliver to Shareholder the following at closing:

(a) A bank cashier's check payable to the order of Michael Larkin and Inka Larkin in the amount of one million Canadian dollars ($1,000,000.00). Upon receipt of this partial payment, Shareholder shall immediately cause to be transferred to Buyer forty percent (40%) of the Shares.

(b) Payment for the remaining sixty percent (60%) Shares shall be as follows:

M.L.

i.      Subject to the Revenue received by Carmel Applied Technologies on the September 30, 2005 fiscal year end ("Fiscal Year 2005") as shown in Exhibit A, attached hereto and incorporated herein, Buyer shall pay to Shareholder on February 1, 2006, the amount determined in Exhibit A, in United States dollars, based upon the Fiscal Year 2005, but not to exceed four hundred thousand United States dollars ($400,000.00). Upon such payment, Shareholder shall immediately cause to be transferred to Buyer that number of Shares determined by division of such payment amount by the price per share.

ii.      Subject to the Revenue received by Carmel Applied Technologies on the September 30, 2006 fiscal year end ("Fiscal Year 2006") as shown in Exhibit B, attached hereto and incorporated herein, Buyer shall pay to Shareholder on February 1, 2007, the amount determined in Exhibit B, in United States dollars, based upon the Fiscal Year 2006, but not to exceed four hundred thousand United States dollars ($400,000.00). Upon such payment, Shareholder shall immediately cause to be transferred to Buyer that number of Shares determined by division of such payment amount by the price per share.

iii.      Subject to the Revenue received by Carmel Applied Technologies on the September 30, 2007 fiscal year end ("Fiscal Year 2007") as shown in Exhibit C, attached hereto and incorporated herein, Buyer shall pay to Shareholder on February 1, 2008, the amount determined in Exhibit B, in United States dollars, based upon the Fiscal Year 2006, but not to exceed four hundred thousand United States dollars ($400,000.00). Upon such payment, Shareholder shall immediately cause to be transferred to Buyer that number of Shares determined by division of such payment amount by the price per share.

iv.      Any remaining Shares shall be purchased for one million United States dollars ($1,000,000.00) over a five (5) year period commencing on January 1, 2010 and ending on December 31, 2014 as follows:

a.      Two hundred thousand United States dollars ($200,000.00) shall be paid by Buyer to Shareholder during 2010, paid in four quarterly payments of fifty thousand United States dollars (50,000.00) per quarter of 2010. Upon each such quarterly payment, Shareholder shall immediately cause to be transferred to Buyer that number of Shares determined by division of such quarterly payment amount by the price per share.

b.      Two hundred thousand United States dollars ($200,000.00) shall be paid by Buyer to Shareholder during 2011, paid in four quarterly payments of fifty thousand United States dollars (50,000.00) per quarter of 2011. Upon each such quarterly payment, Shareholder shall immediately cause to be transferred to Buyer that number of Shares determined by division of such quarterly payment amount by the price per share.

c.      Two hundred thousand United States dollars ($200,000.00) shall be paid by Buyer to Shareholder during 2012, paid in four quarterly payments of fifty thousand United States dollars (50,000.00) per quarter of 2012. Upon each such quarterly payment, Shareholder shall immediately cause to be transferred to Buyer that number of Shares determined by division of such quarterly payment amount by the price per share.

Case: 11-51102   Doc# 29   Filed: 05/09/11   Entered: 05/09/11 16:50:28   Page 10 of 39

d. Two hundred thousand United States dollars ($200,000.00) shall be paid by Buyer to Shareholder during 2013, paid in four quarterly payments of fifty thousand United States dollars (50,000.00) per quarter of 2013. Upon each such quarterly payment, Shareholder shall immediately cause to be transferred to Buyer that number of Shares determined by division of such quarterly payment amount by the price per share.

e. Two hundred thousand United States dollars ($200,000.00) shall be paid by Buyer to Shareholder during 2014, paid in four quarterly payments of fifty thousand United States dollars (50,000.00) per quarter of 2014. Upon each such quarterly payment, Shareholder shall immediately cause to be transferred to Buyer that number of Shares determined by division of such quarterly payment amount by the price per share.

**4. Closing.**

(a) **Scheduled Closing.** The transfer of the Shares by Shareholder to Buyer (the "Closing") shall take place at the location of _______________, at ___ a.m./p.m., pacific time, on 28 of Feb, 2005 or at such other time and place as the parties may agree to in writing (the Closing Date).

(b) **Shareholder's Obligations at Closing.** At the closing, Shareholder must deliver to Buyer the following instruments, in form and substance satisfactory to Buyer and its counsel, against delivery of the partial purchase price specified in Section 3(a), a certificate or certificates representing forty percent (40%) of the Shares, registered in the name of Shareholder, duly endorsed by Shareholder for transfer or accompanied by an assignment of the Shares duly executed by Shareholder. On submission of that certificate or certificates to the Corporation for transfer, Corporation will issue to Buyer a certificate

(c) **Corporation's Obligations at Closing.** At the Closing, Corporation shall deliver, or cause to be delivered, to Buyer, such other documents and instruments as Buyer or Buyer's counsel may reasonably request to better evidence or effectuate the transactions contemplated hereby.

(d) **Obligations of Buyer at the Closing.** At the Closing, Buyer shall deliver to Corporation the partial purchase price set forth in Section 3(a), and such other documents and instruments as Corporation or its counsel may reasonably request to better evidence or effectuate the transactions contemplated hereby.

**5. Selling Parties Obligations at Closing.**

Selling Parties covenant that from the date of this agreement until the closing:

(a) **Buyer's Access to Premises and Information.** Buyer and its counsel, accountants, and other representatives will have full access during normal business hours to all properties, books, accounts, records, contracts, and documents of or relating to Corporation. Selling Parties will furnish or cause to be furnished to Buyer and its representatives all data and information concerning the business, finances, and properties of Corporation that may reasonably be requested.

M.C

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 11 of 39

(b) **Conduct of Business in Normal Course.** Corporation will carry on its business and activities diligently and in substantially the same manner as it previously has been carried out and will not institute any unusual or novel methods of manufacture, purchase, sale, lease, management, accounting, or operation that vary materially from those methods used by Corporation as of the date of this agreement.

(c) **Preservation of business and relationships.** Corporation will use its best efforts to preserve the business organizations intact; to keep available to Corporation their present officers and employees; and to preserve its present relationship with suppliers, customers, and others having business relationships with them.

(d) **No change in corporate structures.** Corporation will not (1) amend its articles of incorporation or bylaws; (2) issue any shares of its capital stock; (3) issue or create any warrants, obligations, subscriptions, options, convertible securities, or other commitments under which any additional shares of its capital stock of any class might be directly or indirectly authorized, issued, or transferred from treasury; or (4) agree to do any of the acts listed above.

(e) **Maintenance of Insurance.** Corporation will continue to carry its existing insurance, subject to variations in amounts required by the ordinary operations of its business.

(f) **Employees and Compensation.** Corporation will not, or will not agree to (1) make any change in compensation payable or to become payable by it, to any officer, employee, sales agent, or representative; (2) make any change in benefits payable to any officer, employee, sales agent, or representative under any bonus or pension plan or other contract or commitment; (3) modify any collective bargaining agreement to which it is a party or by which it may be bound.

(g) **New Transactions.** Corporation will not or will not agree to, without Buyer's consent, enter into any contract, commitment, or transaction not in the usual and ordinary course of its business.

(h) **Dividends, Distributions and Stock Acquisitions.** Corporation will not: (1) Declare, set aside, or pay any dividend or make any distribution in respect of its capital stock; (2) Directly or indirectly purchase, redeem, or otherwise acquire any shares of its capital stock; or (3) Enter into any agreement obligating it to do any of the foregoing prohibited acts.

(i) **Payment of Liabilities and Waiver of Claims.** Corporation will not, or will not agree to: (1) pay any obligation or liabilities, fixed or contingent, other than current liabilities; (2) waive or compromise any right or claim; or (3) cancel, without full payment, any note, loan or other obligation owed to Corporation.

(j) **Existing Agreements.** Corporation will not or will not agree to, modify, amend, cancel or terminate any of its existing contracts or agreements.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 12 of 39

(k) **Warranties True at Closing.** All warranties of Selling Parties set forth in this agreement and in any written statements delivered to Buyer by Selling Parties under this agreement will also be true and correct on the closing date as if made on that date.

6. **Warranties of Selling Parties.** Selling Parties, jointly and severally, warrant that:

(a) **Corporation.** Corporation is a corporation duly organized, validly existing, and in good standing under the laws of Canada and has all necessary corporate powers to own its properties and operate its business as now owned and operated by it; is duly qualified to do intrastate business; and is in good standing in ______________________. These are the only jurisdictions in which the nature of the Corporation's business or any of its properties makes such qualifications necessary.

(g) **Title to Assets.** Corporation has good and marketable title to all their respective assets and interests in assets, whether real, personal, mixed, tangible, or intangible, which constitute all the assets and interests in assets that are used in the businesses of Corporation. All these asset are free and clear of restrictions on or conditions to transfer or assignment and free and clear of mortgages, liens, pledges, charges, encumbrances, equities, claims, easements, rights of way, covenants, conditions, or restrictions, except for (1) those disclosed in Corporation's consolidated balance sheet as of __________________, or in Exhibits _____ to this agreement; (2) the lien of current taxes not yet due and payable; and (3) possible minor matters that, in the aggregate, are not substantial in amount and do not materially detract from or interfere with the present or intended use of any of these assets or materially impair business operations. Corporation is not in default or in arrears in any material respect under any lease. All real property and tangible personal property of Corporation is in good operating condition and repair, ordinary wear and tear excepted. Corporation is in possession of all premises leased to it from others. Neither Shareholder; nor any officers, director, or employee of Corporation; nor any spouse, child or other relative of any of these persons, owns, or has any interest, directly or indirectly, in any of the real or personal property owned by or leased to the Corporation or any copyrights, patents, trademarks, trade names, or trade secrets licensed by Corporation.

(h) **Lawful occupation of real property.** Corporation does not occupy any real property in violation of any law, regulations or decree.

(j) **Insurance Policies.** Exhibit ___ to this agreement is a description of all insurance policies held by Corporation concerning its business and properties. All these policies are in the respective principal amounts set forth in Exhibit ___. Corporation has maintained and now maintains (1) insurance on all its assets and businesses of a type customarily insurance, covering property damage and loss of income by fire or other casualty, and (2) adequate insurance protection against all liabilities, claims, and risks against which it is customary to

M.C.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 13 of 39

insure. Corporation is not in default with respect to payment of premiums on any such policy. Except as set forth in Exhibit ____, no claim is pending under any such policy.

..

(l) **Compliance with Laws.** Corporation has not received notice of any violation of any applicable federal, state, or local statute, law, or regulation (including any applicable building, zoning, environmental protection, or other law, ordinance or regulation) affecting their properties or the operation of their businesses; and to the best of the knowledge of Shareholder and Corporation, there are no such violations.

(m) **Litigation.** Except as set forth in Exhibit ____, there is no pending, or, to the best knowledge of Shareholder and Corporation, threatened, suit, action, arbitration, or legal, administrative, or other proceeding, or governmental investigation against or affecting Corporation or any of its businesses, assets, or financial conditions. The matters set forth in Exhibit ____, if decided adversely to Corporation, will not result in a material adverse change in the business, assets, or financial condition of Corporation. Selling Parties have furnished or made available to Buyer copies of all relevant court papers and other documents relating to the matters set forth in Exhibit ___. Corporation is not in default with respect to any order, write, injunction, or decree of any federal, state, local or foreign court, department, agency, or instrumentality. Except as set forth in Exhibit ___, neither Corporation nor Shareholder is presently engaged in any legal action to recover money due to any of them or damages sustained by any of them.

(n) **Agreement Will Not Cause Breach or Violation.** The consummation of the transactions contemplated by this agreement will not result in or constitute any of the following: (1) a breach of any term or provision of this agreement; (2) a default or an event that, with notice, lapse or time or both, would be a default, breach or violation of the articles of incorporation or bylaws of Corporation or any lease, license, promissory note, conditions sales contract, commitment, indenture, mortgage, deed of trust, or other agreement, instrument, or arrangement to which Shareholder or Corporation is a party or by which any of them or the property of any of them is bound; (3) an event that would permit any party to terminate any agreement or to accelerate the maturity of any indebtedness or other obligation of Corporation; or (4) the creation or imposition of any lien, charge, or encumbrance of any of the properties of Corporation.

(o) **Authority and Consents.** Selling Parties have the right, power, legal capacity, and authority to enter into and perform their respective obligations under this agreement; and no approvals or consents of any persons other than Selling Parties are necessary in connection with it. The execution and delivery of this agreement by Corporation have been duly authorized by all necessary corporate action.

(p) **Identification and Compensation.** Exhibit __ is a list of the names and addresses of all officers, directors, employees, agents, and manufacturer's representatives of Corporation stating the rates of compensation payable to each.

M-C

(q) **Persons with Certain Authority.** Exhibit ___ lists (1) the names and addresses of all persons holding a power of attorney on behalf of Corporation; and (2) the names an addresses of all banks or other financial institutions in which Corporation has an account, deposit or safe deposit box, with the names of all persons authorized to draw on these accounts or deposits or to have access to these boxes.

(r) **Full Disclosure.** None of the warranties made by Shareholder or Corporation or made in any certificate or memorandum furnished or to be furnished by any of them or on their behalf, contains or will contain any untrue statement of a material fact, or omits to state any material fact necessary to make the statements made.

(s) **Capital Structure.** The authorized capital stock of Corporation consists of ____________ (_____) shares of common stock, of which ______ (______) shares are validly issued, fully paid, and nonassessable, and such shares have been issued in full compliance with all Canadian laws. There are no outstanding subscriptions, options, rights, warrants, convertible securities, or other agreements or commitments obligating Corporation to issue or to transfer from treasury any additional shares of its capital stock of any class.

(t) **Title to Shares.** Shareholder is the owner, beneficially and of record, of all the Shares free and clear of all liens, encumbrances, security agreements, equities, options, claims, charges, and restrictions. Shareholder has full power to transfer the Shares to Buyer without obtaining consent or approval of any other person or governmental authority.

(u) **Financial Statements.** Exhibit ___ to this Agreement sets forth consolidated and consolidating balance sheets of Corporation as of ______, ____, and _____, and the related consolidated and consolidating statements of income and retained earnings for the three years ending on those dates audited/ certified by _________, Corporation's independent public accountants, whose opinions with respect to those financial statements appear in that Exhibit ___. Exhibit ___ to this Agreement sets forth unaudited consolidated and consolidating balance sheets of Corporation as of ________, and _______, together with related unaudited consolidated and consolidating statements of income and retained earnings for each of the _____- month periods ending on those dates, certified by the chief financial officer of Corporation as accurately reflecting the financial condition of Corporation for those periods and accurately reflecting all information normally reported to Corporation's independent public accountants for the preparation of Corporation's financial statements. The financial statements in Exhibits ____ and ___ are referred to as the financial statements. The financial statements have been prepared in accordance with generally accepted accounting principles consistently followed by Corporation throughout the periods indicated, and fairly present the financial position of Corporation on the respective dates of the balance sheets included in the financial statements, and the results of its operations for the respective periods indicated.

(v) **Absence of Changes.** Since ______, there has not been any change in the financial condition or operation of Corporation, except changes in the ordinary course of business, which have not been materially adverse.

(w) **Absence of Undisclosed Liabilities.** The Corporation has no debt, liability, or obligation of any nature, whether accrued, absolute, contingent, or otherwise, and

McL

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 15 of 39

whether due or to become due, that is not reflected or reserved against in Corporation's consolidated balance sheet as of ______, included in financial statements or set forth in Exhibit ___ to this Agreement, except for (1) those that may have been incurred after the date of that consolidated balance sheet and (2) those that are not required by generally accepted accounting principles to be included in a balance sheet. All debts, liabilities, and obligations incurred after that date were incurred in the ordinary course of business and are usual and normal in amount both individually and in the aggregate.

(x) **Tax Returns and Audits.** Within the times and in the manner prescribed by law, all material Taxes (as defined in this Section ________) which are due and payable by Corporation have been paid in full, all Tax Returns (as defined in this Section ______) required to be filed in connection therewith have been accurately prepared and duly and timely filed, and all deposits required by law to be made by Corporation with respect to any such Taxes have been duly made. Corporation is not delinquent in the payment of any Taxes nor does Corporation have any Tax deficiency or claim outstanding, assessed or, to Corporation's Knowledge, proposed against it, and there is no basis for any such deficiency of claim. There is not now in force any extension of time with respect to the date on which any Tax Return was or is due to be filed by or with respect to Corporation, or any waiver or agreement by Corporation for the extension or the assessment of any Tax. Corporation has withheld and paid all Taxes required to be withheld and paid in connection with amounts paid or owing to any employee, creditor, independent contractor, director, member, manager or other third party. Corporation has not been advised that any Tax returns, federal, state or other, have been or are being audited. There are no agreements, waivers or other arrangements providing for an extension of time with respect to the assessment of any Taxes or deficiency against Corporation, nor are there any actions, suits, proceedings or claims now pending against Corporation in respect of any Taxes or assessments. There is no pending or, to Corporation's Knowledge, threatened investigation of Corporation by any governmental, federal, state, foreign or local authority relating to any Taxes or assessments, or any claims for additional Taxes or assessments asserted by any such authority. For purposes of this Agreement, the term "Tax" or "Taxes" means any governmental, federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs, duties, capital stock, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty or addition thereto, whether disputed or not, and the term "Tax Return" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(y) **Real Property.** Exhibit ___ to this Agreement sets forth the complete list of all real property owned by or leased to Corporation.

(z) **Books and Records.** Corporation has made and kept (and given Buyer access to) Corporation's books and records, which, in reasonable detail, accurately and fairly reflect the activities and transactions of Corporation related to the Business, the dispositions of assets related to the Business, and the financial condition of Corporation and the Business, including, without limitation, the existence of any and all liabilities, whether actual or contingent. Corporation has not, nor to the Knowledge of Corporation has any other person,

M.L.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 16 of 39

directly or indirectly, on behalf of or with respect to Corporation, engaged in any transaction or made or received any payment which was not properly recorded in the books and records of Corporation.

7. **No Broker.** Neither Corporation, Shareholder, nor Buyer has retained any agent, finder or broker in connection with the transactions contemplated by this Agreement. Corporation and Shareholder shall indemnify, hold harmless and defend Buyer for all commissions, finder's and other fees and expenses of any such persons retained or purportedly retained by Corporation and/or Shareholder.

8. **Disclosure.** No representation, warranty or other statement of Corporation and/or Shareholder contained in this Agreement, or any other document, certificate or written statement furnished to Buyer by Corporation and/or Shareholder in connection with the transactions contemplated by this Agreement contains any untrue statement of a fact or omits to state a fact necessary in order to make the statements contained herein or therein not materially misleading. There is no fact known to Corporation and/ or Shareholder which materially and adversely affects the prospects, earnings, properties or condition, financial or otherwise, of the Business that has not been disclosed herein or in such other documents, certificates and statements furnished to Buyer by Corporation and/or Shareholder for use in connection with the transactions contemplated hereby

9. **Representations and Warranties of Buyer.** Buyer hereby represents and warrants to Corporation that the following statements are true, correct and complete and not misleading as of the date of this Agreement:

(a) **Authorization.** Buyer has the requisite power and authority to execute and deliver this Agreement, and to consummate the transactions contemplated hereby, and to perform its obligations hereunder. All actions and proceedings on the part of Buyer necessary to authorize the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly taken. Buyer need make or obtain no consent, approval, or authorization of, or declaration, filing or registration with, any federal or state governmental or regulatory authority in connection with the execution, delivery, and performance of this agreement and the consummation of the transactions contemplated by this agreement.

(b) **Due Execution and Delivery; Binding Obligations.** This Agreement has been duly executed and delivered by Buyer. This Agreement constitutes the legal, valid and binding agreement and obligation of Buyer enforceable against Buyer in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or conveyance or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability and except as rights of indemnity or contribution may be limited by federal or state securities or other laws or the public policy underlying such laws.

(c) **No Conflict or Violation.** Neither the execution and delivery of this Agreement, nor Buyer's consummation of the transactions contemplated hereby, will result in, to

M.C.

Buyer's knowledge, a violation by Buyer of any law, order, judgment, writ, injunction decree or award to which Buyer is a party or by which Buyer or Buyer's assets are bound.

**10.** **Nature of Representations and Warranties**. All of the representations and warranties set forth in this Agreement, or in any Exhibits or documents, certificates or other instruments delivered pursuant hereto, shall, unless waived in writing by the party or parties for whose benefit such representation or warranty was made, remain in full force and effect regardless of any investigation, verification or approval by any party or by anyone or on behalf of any party.

**11.** **Due Diligence**. Each party to this Agreement acknowledges and agrees that each party has researched and conducted their own due diligence as to the transactions contemplated by this Agreement and has waived the necessity to have an opinion of counsel as to the transactions contemplated by this Agreement.

**12.** **Obligations On and Following the Closing.**

(a) **Expenses.** Each party to this Agreement shall pay all costs and expenses incurred or to be incurred by it in negotiating and preparing this Agreement and in closing and carrying out the transactions contemplated by this Agreement.

(b) **Further Assurances.** Each party shall execute and deliver such instruments and take such other actions as the other party or parties, as the case may be, may reasonably request in order to carry out the intent of this Agreement or to better evidence or effectuate the transactions contemplated herein.

(c) **Survival of Representations and Warranties.** All of the respective representations and warranties of Corporation and Buyer set forth in this Agreement shall remain in full force and effect and shall survive the Closing until the following periods:

i. The representations and warranties set forth in Sections 6(d), 6(g), and 6(x) shall survive until the expiration of the applicable statute of limitations with the appropriate taxing authorities; and

ii. All other representations and warranties shall expire 36 months following the Closing Date.

**13.** **Absence of Litigation.**
No action suit, or proceeding before any court or any governmental body or authority, pertaining to the transaction contemplated by this Agreement or to its consummation, will have been instituted or threatened on or before the closing date.

McL

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 18 of 39

## 14. **Indemnification.**

(a) Corporation shall indemnify, hold harmless and defend Buyer and assigns (collectively, the "Buyer Related Parties") from and against any and all Damages (as hereinafter defined) that are incurred by the Buyer Related Parties and arise out of or are based upon, in whole or in part:

(i) the breach of any representation or warranty of Corporation contained in this Agreement or in any Exhibits hereto;

(ii) the failure by Corporation to perform or comply with any covenant, agreement or other obligation, contained in this Agreement or in any of the Exhibits hereto; or

(iii) any liability or obligation of any kind or nature, past, present or future, fixed or contingent, known or unknown, proximate or remote, excepting only any assumed obligations, relating in any way to Corporation, the Business, the Shares or the transactions contemplated herein.

"Damages," as used in this Section 10, shall mean all liabilities, damages, losses, Taxes, assessments, costs and expenses (including, without limitation, reasonable attorneys' and accountants' fees and expenses) and any judgments or assessments, fines or penalties incurred by any Indemnified Party or parties, whether or not they have arisen from or were incurred in or as a result of any demand, claim, action, suit, assessment or other proceeding or any settlement or judgment, and whether sustained before or after the Closing Date.

(b) Buyer shall indemnify, hold harmless and defend Corporation from and against any and all Damages that arise out of or are based upon:

(i) the breach of any representation or warranty of Buyer contained in this Agreement or in any Exhibits hereto; or

(ii) the failure by Buyer to perform or comply with any covenant, agreement or other obligation, contained in this Agreement.

(c) No claim for indemnification under this Section may be made with respect to the breach of any representation or warranty after the date of expiration of the survival of such representation or warranty as set forth in Section ________________, above.

(d) Notwithstanding any provision of this Agreement to the contrary, no party shall have any obligation to indemnify any other party that would otherwise be entitled to indemnification under Subsections (a)(i) or (b)(i) of this Section, above, unless the persons so entitled to indemnity thereunder have suffered Damages in an aggregate amount in excess of __________

MC

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 19 of 39

Dollars ($25,000________) (the "Deductible"), and then only to the extent of such excess and provided further that this exclusion shall not apply to any individual or series of related claims which exceed the amount of __________________ Dollars ($100,000__________). Notwithstanding any provision of this Agreement to the contrary, Buyer also agrees that the maximum, aggregate amount of claims for Damages for which Buyer shall be entitled to indemnification under Sections 10(a)(i) (except in the case of a fraudulent misrepresentation made by Corporation) is ______ Dollars ($________).

(e) Whenever any claim shall arise for indemnification hereunder, the party entitled to indemnification (the "Indemnified Party") shall promptly notify the other party or parties from whom indemnity may be sought under this Section (the "Indemnifying Party"), of the claim and, when known, the facts constituting the basis for such claim; provided that the Indemnified Party's failure to give such notice shall not affect any rights or remedies of such Indemnified Party hereunder with respect to indemnification for Damages except to the extent that the Indemnifying Party is materially prejudiced thereby. In the event of any claim for indemnification hereunder resulting from or in connection with any claim or legal proceeding by a third party, the notice to the Indemnifying Party shall specify, if known, the amount or any estimate of the amount of the liability arising therefrom. Neither the Indemnified Party nor any Indemnifying Party shall settle or compromise any claim by a third party for which the Indemnified Party is entitled to indemnification hereunder, without the prior written consent of the other party (which shall not be unreasonably withheld), unless suit shall have been instituted against the Indemnified Party and the Indemnifying Party shall not have taken control of such suit after notification thereof as provided in Subsection (f) of this Section, below.

(f) Buyer shall, if it is the Indemnifying Party, and may, at its option, if it is the Indemnified Party and it so elects, (i) take control of the defense and investigation of such lawsuit or action, (ii) employ and engage attorneys of its own choice which are reasonably acceptable to Corporation, if Corporation is the Indemnifying Party, to handle and defend the same, at the Indemnifying Party's cost, risk and expense; and (iii) compromise or settle such claim, which compromise or settlement shall be made only with the written consent of Corporation, which shall not be unreasonably withheld.

**15. Notices.** All notices, requests, demands or other communications hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person or mailed, certified, return-receipt requested, postage prepaid or by facsimile transmission, as follows:

(i) If to Corporation, addressed to:

______________________________
______________________________
______________________________
______________________________
Facsimile: (__) ______________

M.L.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 20 of 39

With a copy to:

________________________________
________________________________
________________________________
________________________________
Facsimile: (___) __________________

(ii) If to Shareholder, addressed to:

________________________________
________________________________
________________________________
________________________________
Facsimile: (___) __________________

With a copy to:

________________________________
________________________________
________________________________
________________________________
Facsimile: (___) __________________

(iii) If to Buyer, addressed to:

________________________________
________________________________
________________________________
________________________________
Facsimile: (___) __________________

With a copy to:

________________________________
________________________________
________________________________
________________________________
Facsimile: (___) __________________

Any party may from time to time, by written notice to the other parties, designate a different address, which shall be substituted for the one specified above for such party. If any notice or other document is sent by certified or registered mail, return receipt requested, postage prepaid, properly addressed as aforementioned, the same shall be deemed served or delivered 72 hours after mailing thereof. If any notice is transmitted by facsimile machine ("fax") to a party, it will be deemed to have been delivered on the date the fax thereof is actually received provided that

an original or photocopy of the document sent is also mailed, postage prepaid, to the address then applicable to such party within 24 hours after such transmission.

**16. Assignment.** Corporation may not assign this Agreement, or assign its rights or delegate its duties hereunder, without the prior written consent of Buyer.

**17. Waiver of Jury Trial.** BECAUSE DISPUTES ARISING IN CONNECTION WITH COMPLEX FINANCIAL TRANSACTIONS ARE MOST QUICKLY AND ECONOMICALLY RESOLVED BY AN EXPERIENCED AND EXPERT PERSON AND THE PARTIES WISH APPLICABLE STATE AND FEDERAL LAWS TO APPLY (RATHER THAN ARBITRATION RULES), THE PARTIES DESIRE THAT THEIR DISPUTES BE RESOLVED BY A JUDGE APPLYING SUCH APPLICABLE LAWS. THEREFORE, TO ACHIEVE THE BEST COMBINATION OF THE BENEFITS OF THE JUDICIAL SYSTEM AND OF ARBITRATION, THE PARTIES HERETO WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING BROUGHT TO ENFORCE OR DEFEND ANY RIGHTS OR REMEDIES UNDER THIS AGREEMENT, ANY AGREEMENTS REFERRED TO HEREIN OR ANY DOCUMENTS RELATED HERETO OR THERETO.

**18. Miscellaneous.**

(a) **Severability**. Any provision of this Agreement which is illegal, invalid or unenforceable shall be ineffective to the extent of such illegality, invalidity or unenforceability, without affecting in any way the remaining provisions hereof. In such event, this Agreement will be construed as if such unlawful or unenforceable provisions had never been contained in this Agreement in order to effectuate the intentions of the parties in executing this Agreement.

(b) **Further Assurances**. Each party shall execute and deliver, both before and after the Closing, such instruments and take such other actions as the other party or parties, as the case may be, may reasonably request in order to carry out the intent of this Agreement or to better evidence or effectuate the transactions contemplated herein.

(c) **Governing Law**. This Agreement is deemed to have been made in the State of California, and its interpretation, its construction and the remedies for its enforcement or breach are to be applied pursuant to, and in accordance with, the internal laws of California.

(d) **Incorporation and Amendment**. This Agreement and any Exhibits hereto constitute the entire agreement of the parties, superseding and extinguishing all prior agreements and understandings, representations and warranties, relating to the subject matter hereof. This Agreement may not be modified, amended or terminated except by written agreement specifically referring to this Agreement signed by the parties.

(e) **Waiver**. No waiver of a breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver, and no such waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

M.C.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 22 of 39

(f) **Headings.** The section and paragraph headings contained herein are for ease of reference only and are not intended to define or limit the contents of such sections.

(g) **Interpretation.** The use of the singular or plural form shall include the other form and the use of the masculine, feminine or neuter gender shall include the other genders. Each party has participated in the drafting of this Agreement. Accordingly, no party shall have any provision of this Agreement strictly construed against it by reason of such party having drafted the provision in question.

(h) **Counterparts.** This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**[SIGNATURE BLOCKS ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, the undersigned ____________ have caused this Agreement of Purchase and Sale of Stock to be executed by persons thereunto duly authorized, and the individuals have executed this Agreement of Purchase and Sale of Stock, on the date first above stated.

**"BUYER"**

______________________________
Robert Hayner

______________________________
Jane Hayner

**"CORPORATION"**

Michael Larking Consulting, Inc.,
A Canadian Corporation

By: ______________________________
Its: President

**"SHAREHOLDER"**

______________________________
Michael Larkin

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 23 of 39

(f) **Headings.** The section and paragraph headings contained herein are for ease of reference only and are not intended to define or limit the contents of such sections.

(g) **Interpretation.** The use of the singular or plural form shall include the other form and the use of the masculine, feminine or neuter gender shall include the other genders. Each party has participated in the drafting of this Agreement. Accordingly, no party shall have any provision of this Agreement strictly construed against it by reason of such party having drafted the provision in question.

(h) **Counterparts.** This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**[SIGNATURE BLOCKS ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, the undersigned ____________ have caused this Agreement of Purchase and Sale of Stock to be executed by persons thereunto duly authorized, and the individuals have executed this Agreement of Purchase and Sale of Stock, on the date first above stated.

**"BUYER"**

______________________________
Robert Hayner

______________________________
Jane Hayner

**"CORPORATION"**

Michael Larking Consulting, Inc.,
A Canadian Corporation

By: ______________________________
Its: ______________________________

**"SHAREHOLDER"**

______________________________
Michael Larkin

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 24 of 39

Inka Larkin

**EXHIBIT A**
**To the Agreement of Purchase and Sale of Stock**

**Fiscal Year 2005**

**Baseline - US$7,500,000 in Revenue**

| Revenue Growth Above Baseline | Payment (in US$) |
|---|---|
| Less than 10% | 0 |
| At least 10% but less than 20% | 75,000 |
| At least 20% but less than 30% | 112,500 |
| At least 30% but less than 40% | 150,000 |
| At least 40% but less than 50% | 225,000 |
| At least 50% but less than 60% | 300,000 |
| At least 60% but less than 70% | 375,000 |
| At least 70% | 400,000 |

Notwithstanding anything in the Agreement to the contrary, Revenue for Fiscal Year 2005 shall be determined based on Revenue received during the period commencing on the Closing Date and ending on December 31, 2005, which Revenue received shall then be annualized based on the number of days elapsed during such period.

M.C.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 26 of 39

**EXHIBIT B**
**To the Agreement of Purchase and Sale of Stock**

**Fiscal Year 2006**

**Baseline - US$13,000,000 in Revenue**

| Revenue Growth Above Baseline | Payment (in US$) |
|---|---|
| Less than 5% | 0 |
| At least 5% but less than 10% | 75,000 |
| At least 10% but less than 15% | 112,500 |
| At least 15% but less than 20% | 150,000 |
| At least 20% but less than 25% | 225,000 |
| At least 25% but less than 30% | 300,000 |
| At least 30% but less than 35% | 375,000 |
| At least 35% but less than 40% | 400,000 |
| At least 40% but less than 45% | 400,000 |
| At least 45% | 400,000 |

If the amount of any Payment for Fiscal Year 2005 (exclusive of any indemnification or other adjustments) is less than the maximum Payment otherwise available for Fiscal Year 2005 (the difference between such maximum amount otherwise available and such Payment, the "**2005 Shortfall Amount**"), the 2005 Shortfall Amount, or a portion thereof, may be paid as follows, as part of the Fiscal Year 2006 Payment, in the event that Revenue Growth Above Baseline during Fiscal Year 2006 is at least 50%:

**Amount of 2005 Shortfall Amount to be Paid as part of the Fiscal Year 2006 Payment**

**Baseline - US$13,000,000 in Revenue**

| Revenue Growth Above Baseline | Amount of 2005 Shortfall Amount to be Paid (US$) |
|---|---|
| At least 50% but less than 55% | 75,000 or, if less, the 2005 Shortfall Amount |
| At least 55% but less than 60% | 112,500 or, if less, the 2005 Shortfall Amount |
| At least 60% but less than 65% | 150,000 or, if less, the 2005 Shortfall Amount |
| At least 65% but less than 70% | 187,500 or, if less, the 2005 Shortfall Amount |
| At least 70% but less than 75% | 225,000 or, if less, the 2005 Shortfall Amount |
| At least 75% but less than 80% | 262,500 or, if less, the 2005 Shortfall Amount |
| At least 80% but less than 85% | 300,000 or, if less, the 2005 Shortfall Amount |
| At least 85% but less than 90% | 375,000 or, if less, the 2005 Shortfall Amount |
| At least 90% | 400,000 or, if less, the 2005 Shortfall Amount |

M.C.

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 27 of 39

**EXHIBIT C**
**To the Agreement of Purchase and Sale of Stock**

**Fiscal Year 2007**

**Baseline – US$18,000,000 in Revenue**

| Revenue Growth Above Baseline | Payment (in US$) |
|---|---|
| Less than 2.5% | 0 |
| At least 2.5% but less than 5% | 75,000 |
| At least 5% but less than 10% | 150,000 |
| At least 10% but less than 12.5% | 225,000 |
| At least 12.5% but less than 15% | 300,000 |
| At least 15% but less than 20% | 375,000 |
| At least 20% | 400,000 |

If the amount of any Payment for Fiscal Year 2006 (including the 2005 Shortfall Amount, if any) (exclusive of any indemnification or other adjustments) is less than the maximum Payment otherwise available for Fiscal Year 2006 (including the 2005 Shortfall Amount, if any) (the difference between such maximum amount otherwise available and such Payment, the "**2006 Shortfall Amount**"), the 2006 Shortfall Amount, or a portion thereof, may be paid as follows, as part of the Fiscal Year 2007 Payment, in the event that Revenue Growth Above Baseline during Fiscal Year 2006 is at least 22.5%:

**Amount of 2006 Shortfall Amount to be Paid as part of the Fiscal Year 2007 Payment**

**Baseline - $18,000,000 in Revenue**

| Revenue Growth Above Baseline | Amount of 2006 Shortfall Amount to be Paid (in US$) |
|---|---|
| At least 22.5% but less than 25% | 75,000 or, if less, the 2005 Shortfall Amount |
| At least 25% but less than 30% | 150,000 or, if less, the 2005 Shortfall Amount |
| At least 30% but less than 32.5% | 225,000 or, if less, the 2005 Shortfall Amount |
| At least 32.5% but less than 35% | 300,000 or, if less, the 2005 Shortfall Amount |
| At least 35% but less than 40% | 375,000 or, if less, the 2005 Shortfall Amount |
| At least 40% but less than 42.5% | 400,000 or, if less, the 2005 Shortfall Amount |
| At least 42.5% but less than 45% | 400,000 or, if less, the 2005 Shortfall Amount |
| At least 45% but less than 50% | 400,000 or, if less, the 2005 Shortfall Amount |
| At least 50% but less than 52.5% | 400,000 or, if less, the 2005 Shortfall Amount |
| At least 52.5% but less than 55% | 400,000 or, if less, the 2005 Shortfall Amount |
| At least 55% but less than 60% | 400,000 or, if less, the 2005 Shortfall Amount |
| At least 60% but less than 62.5% | 400,000 or, if less, the 2005 Shortfall Amount |

Case: 11-51102 Doc# 29 Filed: 05/09/11 Entered: 05/09/11 16:50:28 Page 28 of 39

# EXHIBIT B

PLD-C-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): ROY C. GUNTER III (State Bar # 066055) LAW OFFICES OF ROY C. GUNTER III 580 CALLE PRINCIPAL, SUITE 2, MONTEREY, CA 93940 TELEPHONE NO: (831) 648-8822 FAX NO. (Optional): (831) 648-8844 E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): PLAINTIFFS MICHAEL LARKIN and INKA LARKIN | FOR COURT USE ONLY<br>FILED<br>FEB 26 2009<br>CONNIE MAZZEI<br>CLERK OF THE SUPERIOR COURT<br>~~S. HANS~~ DEPUTY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY<br>STREET ADDRESS: 1200 AGUAJITO ROAD<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: MONTEREY 93940<br>BRANCH NAME: | |
| PLAINTIFF: MICHAEL LARKIN and INKA LARKIN<br>DEFENDANT: ROBERT E. HAYNER AND JANE HAYNER<br>[X] DOES 1 TO 100, INCLUSIVE | |
| CONTRACT<br>[X] COMPLAINT [ ] AMENDED COMPLAINT (Number):<br>[ ] CROSS-COMPLAINT [ ] AMENDED CROSS-COMPLAINT (Number): | |
| Jurisdiction (check all that apply):<br>[ ] ACTION IS A LIMITED CIVIL CASE<br>Amount demanded [ ] does not exceed $10,000<br>[ ] exceeds $10,000 but does not exceed $25,000<br>[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)<br>[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint<br>[ ] from limited to unlimited<br>[ ] from unlimited to limited | CASE NUMBER:<br>M97268 |

1. **Plaintiff*** *(name or names)*: MICHAEL LARKIN and INKA LARKIN

   alleges causes of action against **defendant*** *(name or names)*: ROBERT E. HAYNER, JANE HAYNER, and DOES 1 TO 100, INCLUSIVE

2. This pleading, including attachments and exhibits, consists of the following number of pages: 24

3. a. Each plaintiff named above is a competent adult
   - [ ] **except** plaintiff *(name)*:
     - (1) [ ] a corporation qualified to do business in California
     - (2) [ ] an unincorporated entity *(describe)*:
     - (3) [ ] other *(specify)*:

   b. [ ] Plaintiff *(name)*:
   - a. [ ] has complied with the fictitious business name laws and is doing business under the fictitious name *(specify)*:
   - b. [ ] has complied with all licensing requirements as a licensed *(specify)*:

   c. [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.

4. a. Each defendant named above is a natural person
   - [ ] **except** defendant *(name)*:
     - (1) [ ] a business organization, form unknown
     - (2) [ ] a corporation
     - (3) [ ] an unincorporated entity *(describe)*:
     - (4) [ ] a public entity *(describe)*:
     - (5) [ ] other *(specify)*:
   - [ ] **except** defendant *(name)*:
     - (1) [ ] a business organization, form unknown
     - (2) [ ] a corporation
     - (3) [ ] an unincorporated entity *(describe)*:
     - (4) [ ] a public entity *(describe)*:
     - (5) [ ] other *(specify)*:

* If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.

Page 1 of 2

Form Approved for Optional Use Judicial Council of California PLD-C-001 [Rev. January 1, 2007]

COMPLAINT—Contract

Code of Civil Procedure, § 425.12

LexisNexis® Automated California Judicial Council Forms

4. *(Continued)*

b. The true names of defendants sued as Does are unknown to plaintiff.

(1) [ ] Doe defendants *(specify Doe numbers)*: ______ were the agents or employees of the named defendants and acted within the scope of that agency or employment.

(2) [X] Doe defendants *(specify Doe numbers)*: 1 TO 100, INCLUSIVE are persons whose capacities are unknown to plaintiff.

c. [ ] Information about additional defendants who are not natural persons is contained in Attachment 4c.

d. [ ] Defendants who are joined under Code of Civil Procedure section 382 are *(names)*:

5. [ ] Plaintiff is required to comply with a claims statute, and

a. [ ] has complied with applicable claims statutes, *or*

b. [ ] is excused from complying because *(specify)*:

6. [ ] This action is subject to [ ] Civil Code section 1812.10 [ ] Civil Code section 2984.4.

7. This court is the proper court because

a. [ ] a defendant entered into the contract here.

b. [ ] a defendant lived here when the contract was entered into.

c. [X] a defendant lives here now.

d. [ ] the contract was to be performed here.

e. [ ] a defendant is a corporation or unincorporated association and its principal place of business is here.

f. [ ] real property that is the subject of this action is located here.

g. [ ] other *(specify)*:

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:

[X] Breach of Contract

[X] Common Counts

[ ] Other *(specify)*:

9. [ ] Other allegations:

10. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

a. [X] damages of: $ 400,000.00

b. [X] interest on the damages

(1) [X] according to proof

(2) [X] at the rate of *(specify)*: 10% percent per year from *(date)*: September 30, 2005

c. [ ] attorney's fees

(1) [ ] of: $

(2) [ ] according to proof.

d. [X] other *(specify)*: SUCH OTHER AND FURTHER RELIEF AS THIS COURT MAY DEEM APPROPRIATE.

11. [ ] The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers)*:

Date: February 26, 2009

ATTORNEY ROY C. GUNTER III
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

| SHORT TITLE: LARKIN vs. HAYNER | CASE NUMBER: |
|---|---|

## FIRST (number) CAUSE OF ACTION—Breach of Contract

ATTACHMENT TO [X] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name)*: MICHAEL LARKIN and INKA LARKIN

alleges that on or about *(date)*: FEBRUARY 28, 2005

a [X] written [ ] oral [ ] other *(specify)*:

agreement was made between *(name parties to agreement)*: PLAINTIFFS, DEFENDANT ROBERT E. HAYNER, DEFENDANT JANE HAYNER AND MICHAEL LARKIN CONSULTING, INC.

[X] A copy of the agreement is attached as Exhibit A, or AND

[ ] The essential terms of the agreement [ ] are stated in Attachment BC-1 [X] are as follows *(specify)*:

CONCURRENTLY WITH THE PARTIES' EXECUTION OF EXHIBIT "A", PLAINTIFFS TRANSFERRED TO DEFENDANTS' CORPORATION CARMEL APPLIED TECHNOLOGIES, INC. VALUABLE SOFTWARE, WHICH TRANSFER WAS A CONDITION CONCURRENT TO DEFENDANTS' PURCHASE OF STOCK FROM PLAINTIFFS IN REGARD TO MICHAEL LARKIN CONSULTING, INC.

BC-2. On or about *(dates)*: September 30, 2005

defendant breached the agreement by [ ] the acts specified in Attachment BC-2 [X] the following acts *(specify)*:

FAILING TO PAY PLAINTIFFS $400,000.00 AS A CONSEQUENCE OF SUFFICIENT REVENUES HAVING BEEN EARNED BY CARMEL APPLIED TECHNOLOGIES DURING ITS FISCAL YEAR 2005 IN ORDER TO MAKE $400,000.00 DUE AND PAYABLE.

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement

[ ] as stated in Attachment BC-4 [X] as follows *(specify)*:

$400,000.00

BC-5. [ ] Plaintiff is entitled to attorney fees by an agreement or a statute

[ ] of $

[ ] according to proof.

BC-6. [X] Other:

PLAINTIFFS ARE ENTITLED TO LEGAL INTEREST OF TEN PERCENT (10%) PER ANNUM ON THE SUM OF $400,000.00 FROM SEPTEMBER 30, 2005, UNTIL DATE OF JUDGMENT.

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) [Rev. January 1, 2007]

CAUSE OF ACTION—Breach of Contract

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

*LexisNexis® Automated California Judicial Council Forms*

PLD-C-001(2)

| SHORT TITLE: LARKIN vs. HAYNER | CASE NUMBER: |
| --- | --- |

SECOND (number) **CAUSE OF ACTION—Common Counts**

ATTACHMENT TO [X] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

CC-1. Plaintiff *(name):* MICHAEL LARKIN and INKA LARKIN

alleges that defendant *(name):* ROBERT E. HAYNER and JANE HAYNER

became indebted to [X] plaintiff [ ] other *(name):*

a. [ ] within the last four years
   (1) [ ] on an open book account for money due.
   (2) [ ] because an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff.

b. [X] within the last [ ] two years [X] four years
   (1) [ ] for money had and received by defendant for the use and benefit of plaintiff.
   (2) [ ] for work, labor, services and materials rendered at the special instance and request of defendant and for which defendant promised to pay plaintiff.
      [ ] the sum of $
      [ ] the reasonable value.
   (3) [X] for goods, wares, and merchandise sold and delivered to defendant and for which defendant promised to pay plaintiff
      [X] the sum of $ 400,000.00
      [ ] the reasonable value.
   (4) [ ] for money lent by plaintiff to defendant at defendant's request.
   (5) [ ] for money paid, laid out, and expended to or for defendant at defendant's special instance and request.
   (6) [ ] other *(specify):*

CC-2. $400,000.00 , which is the reasonable value, is due and unpaid despite plaintiff's demand, plus prejudgment interest [X] according to proof [X] at the rate of 10% percent per year from *(date):* 9/30/2005

CC-3. [ ] Plaintiff is entitled to attorney fees by an agreement or a statute
   [ ] of $
   [ ] according to proof.

CC-4. [ ] Other:

Page 4

~~Page 1 of 1~~

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(2) [Rev. January 1, 2009]

**CAUSE OF ACTION—Common Counts**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

*LexisNexis® Automated California Judicial Council Forms*

# EXHIBIT C

JUD-100

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
ROY C. GUNTER III (Bar # 066055)
LAW OFFICES OF ROY C. GUNTER III
580 CALLE PRINCIPAL, SUITE 2
MONTEREY, CA 93940
TELEPHONE NO.: (831) 648-8822 FAX NO. (Optional): (831) 648-8844
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): PLAINTIFFS MICHAEL LARKIN and INKA LARKIN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 AGUAJITO ROAD
MAILING ADDRESS:
CITY AND ZIP CODE: MONTEREY 93940
BRANCH NAME:

PLAINTIFF: MICHAEL LARKIN AND INKA LARKIN

DEFENDANT: ROBERT E. HAYNER AND JANE HAYNER

FOR COURT USE ONLY

FILED
SEP 2 2 2010
CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
DEPUTY
S. KELLY

JUDGMENT
[ ] By Clerk [X] By Default [ ] After Court Trial
[X] By Court [ ] On Stipulation [ ] Defendant Did Not Appear at Trial

CASE NUMBER: M 97268

## JUDGMENT

1. [X] BY DEFAULT
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. [ ] **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. [X] **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) [ ] plaintiff's testimony and other evidence.
      (2) [X] plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. [ ] ON STIPULATION
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. [ ] the signed written stipulation was filed in the case.
   c. [ ] the stipulation was stated in open court [ ] the stipulation was stated on the record.

3. [ ] AFTER COURT TRIAL. The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time)*:
      before *(name of judicial officer)*:
   b. Appearances by:
      [ ] Plaintiff *(name each)*:
      (1)
      (2)
      [ ] Continued on Attachment 3b.
      [ ] Plaintiff's attorney *(name each)*:
      (1)
      (2)
      [ ] Defendant *(name each)*:
      (1)
      (2)
      [ ] Continued on Attachment 3b.
      [ ] Defendant's attorney *(name each)*:
      (1)
      (2)
   c. [ ] Defendant did not appear at trial. Defendant was properly served with notice of trial.
   d. [ ] A statement of decision (Code Civ. Proc., § 632) [ ] was not [ ] was requested.

Form Approved for Optional Use
Judicial Council of California
JUD-100 [New January 1, 2002]
JUDGMENT
Page 1 of 2
Code of Civil Procedure, §§ 585, 664.6
LexisNexis® Automated California Judicial Council Forms

COPY TO CLIENT 10-8-10

| PLAINTIFF: MICHAEL LARKIN, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT: ROBERT E. HAYNER, et al. | M 97268 |

JUDGMENT IS ENTERED AS FOLLOWS BY: [X] THE COURT [ ] THE CLERK

4. [ ] **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. [X] for plaintiff *(name each)*:

MICHAEL LARKIN and INKA LARKIN

and against defendant *(names)*:

ROBERT E. HAYNER and JANE HAYNER

[ ] Continued on Attachment 5a.

b. [ ] for defendant *(name each)*:

c. [ ] for cross-complainant *(name each)*:

and against cross-defendant *(name each)*:

[ ] Continued on Attachment 5c.

d. [ ] for cross-defendant *(name each)*:

6. **Amount.**

a. [X] Defendant named in item 5a above must pay plaintiff on the complaint:

| | | | |
|---|---|---|---|
| (1) | [X] | Damages | $ 400,000.00 |
| (2) | [X] | Prejudgment interest at the annual rate of 10 % | $ 188,534.25 |
| (3) | [ ] | Attorney fees | $ |
| (4) | [X] | Costs | $ 457.50 |
| (5) | [ ] | Other *(specify)*: | $ |
| (6) | | TOTAL | $ 588,991.75 |

b. [ ] Plaintiff to receive nothing from defendant named in item 5b.

[ ] Defendant named in item 5b to recover costs $

[ ] and attorney fees $

c. [ ] Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | |
|---|---|---|---|
| (1) | [ ] | Damages | $ |
| (2) | [ ] | Prejudgment interest at the annual rate of % | $ |
| (3) | [ ] | Attorney fees | $ |
| (4) | [ ] | Costs | $ |
| (5) | [ ] | Other *(specify)*: | $ |
| (6) | | TOTAL | $ |

d. [ ] Cross-complainant to receive nothing from cross-defendant named in item 5d.

[ ] Cross-defendant named in item 5d to recover costs $

[ ] and attorney fees $

7. [ ] Other *(specify)*:

Date: 9/22/10

[X] THOMAS W. WILLS
JUDICIAL OFFICER

Date: [ ] Clerk, by ____________________, Deputy

**CLERK'S CERTIFICATE** *(Optional)*

(SEAL)

I certify that this is a true copy of the original judgment on file in the court.

Date:

Clerk, by ____________________, Deputy

# EXHIBIT D

EJ-001

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, address, State Bar number, and telephone number):
Recording requested by and return to:
ROY C. GUNTER III (Bar # 066055)
LAW OFFICES OF ROY C. GUNTER III
580 CALLE PRINCIPAL, SUITE 2
MONTEREY, CA 93940
(831) 648-8822 FAX (831) 648-8844

[X] ATTORNEY FOR [X] JUDGMENT CREDITOR [ ] ASSIGNEE OF RECORD

Stephen L. Vagnini
Monterey County Recorder
Recorded at the request of
**Filer**

RANJELIQUE
10/26/2010
10:21:36

DOCUMENT: 2010063007

| | |
|---|---|
| Titles: 1/ Pages: | 2 |
| Fees.... | 29.00 |
| Taxes... | |
| Other... | 2.00 |
| AMT PAID | $31.00 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 AGUAJITO ROAD
MAILING ADDRESS:
CITY AND ZIP CODE: MONTEREY 93940
BRANCH NAME:

PLAINTIFF: MICHAEL LARKIN and INKA LARKIN

DEFENDANT: ROBERT E. HAYNER and JANE HAYNER

CASE NUMBER: M 97268

FOR COURT USE ONLY

**ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS** [ ] Amended

1. The [X] judgment creditor [ ] assignee of record applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
   Name and last known address
   ROBERT E. HAYNER
   4179 CREST RD.
   PEBBLE BEACH, CA 93953
   b. Driver's license no. [last 4 digits] and state: [X] Unknown
   c. Social security no. [last 4 digits]: [X] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address)*:

2. [X] Information on additional judgment debtors is shown on page 2.

3. Judgment creditor *(name and address)*:
   MICHAEL LARKIN c/o LAW OFFICE OF ROY C. GUNTER III
   580 CALLE PRINCIPAL, STE. 2, MONTEREY, CA 93940

4. [X] Information on additional judgment creditors is shown on page 2.

5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

Date: 10/20, 2010

ROY C. GUNTER III
(TYPE OR PRINT NAME)

(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 588,991.75

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on *(date)*: September 22, 2010
   b. Renewal entered on *(date)*:

9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of *(name and address)*:

11. A stay of enforcement has
    a. [X] not been ordered by the court.
    b. [ ] been ordered by the court effective until *(date)*:

12. a. [X] I certify that this is a true and correct abstract of the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF MONTEREY

This abstract issued on *(date)*:
OCT 21 2010

CONNIE MAZZEI Clerk, by S. KELLY, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS**

Page 1 of 2
Code of Civil Procedure, §§ 488.480, 674, 700.190

LexisNexis® Automated California Judicial Council Forms

cc: cl

| PLAINTIFF: MICHAEL LARKIN and INKA LARKIN<br>DEFENDANT: ROBERT E. HAYNER and JANE HAYNER | CASE NUMBER:<br>M 97268 |
|---|---|

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address)*:
INKA LARKIN
c/o LAW OFFICE OF ROY C. GUNTER III
580 CALLE PRINCIPAL, STE. 2
MONTEREY, CA 93940

14. Judgment creditor *(name and address)*:

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16. Name and last known address
JANE HAYNER
4179 CREST RD.
PEBBLE BEACH, CA 93953

Driver's license no. [last 4 digits] and state: ☒ Unknown
Social security no. [last 4 digits]: ☒ Unknown
Summons was personally served at or mailed to *(address)*:

17. Name and last known address

Driver's license no. [last 4 digits] and state: ☐ Unknown
Social security no. [last 4 digits]: ☐ Unknown
Summons was personally served at or mailed to *(address)*:

18. Name and last known address

Driver's license no. [last 4 digits] and state: ☐ Unknown
Social security no. [last 4 digits]: ☐ Unknown
Summons was personally served at or mailed to *(address)*:

19. Name and last known address

Driver's license no. [last 4 digits] and state: ☐ Unknown
Social security no. [last 4 digits]: ☐ Unknown
Summons was personally served at or mailed to *(address)*:

20. ☐ Continued on Attachment 20.

**END OF DOCUMENT**